UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| KATHLEEN WISEMAN, as personal representative of the ESTATE OF RICKY D. WISEMAN, ED ELDER, and ELEANOR ELDER, <br>     Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br>     Defendant. | ) ) ) ) ) ) ) ) ) ) | 3:10-cv-111-RLY-WGH |

**ENTRY ON THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The Cannelton Locks and Dam ("Cannelton Dam" or "Dam") is located three miles upstream from Cannelton, Indiana. The Dam was designed, built, and is operated by the United States Army Corps of Engineers. The Dam has 12 gates, anchored by 13 large piers. The water in and around the Dam is turbulent and dangerous; therefore, the Army Corps marks the restricted areas with buoys, signs, a flashing red light, and a line on the lock wall. (Defendant's Ex. A, Deposition of Lockmaster Jeffrey O. Hill ("Hill Dep.") at 112-128).

Ricky D. Wiseman ("Wiseman") and Ed Elder ("Elder") were fishing buddies who frequently fished the Ohio River near the Cannelton Dam. (Defendant's Ex. B, Deposition of Ed Elder ("Elder Dep.") at 51-52). Elder testified that he was familiar with the Dam's gates, and that, when the gates were opened, the water flowing through could

1

be turbulent. (*Id*. at 56, 59-61). Elder was familiar with the sign on the lock wall which marked the area "Restricted No Boats Here To Dam," and understood that boaters were not supposed to go beyond the sign toward the Dam. (*Id*. at 68-69). On a few prior occasions, Elder and Wiseman "went up close to the restricted area to look at the gates and the water coming out." (*Id*. at 82-83).

In the early morning hours of August 4, 2008, Wiseman and Elder anchored their boat and began fishing near the end of the lock wall. (*Id*. at 81-82). About a half an hour later, they lifted their anchors and ventured just inside the buoys, each marked "Danger Dam," and crossed the river as Elder watched the depth finder. (*Id*.). Elder has no further recollection of the events of August 4, 2008. (*Id*. at 83-84).

Four other fishermen were fishing that day just outside the restricted area. (*See generally* Defendant's Ex. C, Police Report; Defendant's Ex. D, Declaration of Shawn Allen ("Allen Dec."); Defendant's Ex. E, Declaration of Michael Graw ("Graw Dec."); Defendant's Ex. F, Declaration of Jeremy Wright ("Wright Dec.")). Barton Zimmerman ("Zimmerman") and Shawn Allen ("Allen") were in a boat located below Gate 3; Michael Graw ("Graw") and Jeremy Wright ("Wright") were in a boat located below Gate 6. (Police Report at 4). Allen, Graw, and Wright witnessed the Wiseman/Elder boat motor along the lock wall and into the restricted area toward the Dam. (Allen Dec. ¶ 6; Graw Dec. ¶ 7; Wright Dec. ¶ 5). It appeared to Allen that Wiseman and Elder were trying to

tie-off or anchor right at the Dam face, between Gates 3[1] and 4. (Allen Dec. ¶ 6). Shortly thereafter, the Wiseman/Elder boat was drawn into the boil at Gate 4. (*Id*.; Graw Dec. ¶ 7; Wright Dec. ¶ 5). As Wiseman and Elder clung to the gate trunnion, Zimmerman and Allen motored their boat toward the Dam, trying to stay closer to closed Gates 1-3, where the water was calmer. (Allen Dec. ¶ 7; Wright Dec. ¶ 6; Graw Dec. ¶ 8). As Zimmerman attempted to untie a line from the anchor to throw to Wiseman and Elder, Allen moved toward Zimmerman to toss him the other (loose) end of the anchor line, but in the process, Allen accidentally hit the kill-switch. (Allen Dec. ¶ 7). The engine stopped, and the stern of the boat swung around toward Gate 4, sending Zimmerman into the water. (*Id*.; Wright Dec. ¶ 6; Graw Dec. ¶ 8). Graw and Wright drove their boat toward the Dam area to save Allen; Allen shouted to stay back and then fell into the water. (Allen Dec. ¶ 7; Wright Dec. ¶ 6; Graw Dec. ¶ 8). The Zimmerman/Allen boat was drawn into the boil, and disappeared. (Wright Dec. ¶ 6; Graw Dec. ¶ 8). Of the four men who fell in, only Allen wore a life jacket. (Police Report at 4, 5; Allen Dec.¶ 7).

Graw and Wright attempted to call 911, but had no cell phone service. They approached another boater, who made the call. (Graw Dec. ¶ 9; Wright Dec. ¶ 6) Returning to the vicinity of the Dam, they found Allen alive below Gate 3 and pulled him from the water. (Graw Dec. ¶ 9; Wright Dec. ¶ 6). Two other boaters, Gregory Kelly and

---

[1] When they approached that area, Gates 1-3 were closed and Gates 4-12 were open. (Allen Dec. ¶ 3; Graw Dec. ¶ 5; Wright Dec. ¶ 5 (noting that Gate 3 was closed and Gate 4 was open)).

Ronda Allison, pulled Elder, unconscious and tangled in fishing rods, from the river. (Police Report at 3). He was flown by helicopter to the University of Louisville Trauma Center. (*Id*.). Wiseman and Zimmerman did not survive. (*Id*. at 5).

Kathleen Wiseman, as personal representative of the Estate of Ricky D. Wiseman, Ed Elder, and Eleanor Elder, filed the present negligence action against the United States under the Suits in Admiralty Act, 46 U.S.C. § 30901 *et seq*. ("SIAA"). The "SIAA permits suits in admiralty against the United States 'in cases where . . . if a private person or property were involved, a proceeding in admiralty could be maintained . . . .' That is, it renders the United States liable to suit to the same extent that a private person would be liable." *Pearce v. United States*, 261 F.3d 643, 647 (6th Cir. 2001) (quoting *Faust v. South Carolina State Highway Dep't*, 721 F.2d 934, 938 n.2 (4th Cir. 1983)). A negligence action under the SIAA consists of the following elements: (1) the existence of a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) actual loss, injury, or damage. *Id*. at 647-48 (citing 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5-2 at 170 (3d Ed. 2001)).

Plaintiffs and the United States cross-move for summary judgment. Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Hall v. Nalco Co.*, 534 F.3d 644, 646 (7th Cir. 2008). When a summary judgment motion is submitted and supported by evidence as provided in Rule

56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Plaintiffs contend that "someone" opened the Dam Gate when Wiseman and Elder were fishing at the Dam face, and that an alarm should have sounded before the Gate was opened. This simple warning, Plaintiffs argue, would have saved Wiseman's and Zimmerman's lives. Plaintiffs' unsupported theory is contradicted by the overwhelming evidence submitted by the United States, which unequivocally establishes that Gates 4-12 were open at 3:00 a.m., August 3, 2008 – 28 hours before Wiseman and Elder went fishing the following morning. (*See* Defendant's Ex. H, Declaration of Lock Operator Janice Alexander ¶ 1; Defendant's Ex. I, Operating Log; Defendant's Ex. J, Readings Report; Defendant's Ex. K, Weather Data, Gage Readings and Operation of Dam; Defendant's Ex. G, Deposition of Lock Operator Mark Short at 27-28; Graw Dec. ¶ 5; Wright Dec. ¶ 5; Docket # 65, manually filed video footage showing downstream flows).

Plaintiffs also attack the contemporaneous video footage from cameras 6 and 14 at the Cannelton Dam (*see* Docket # 65), dated August 4, 2008, claiming that the images depicting the Wiseman/Elder boat motoring into the restricted area are "false." Plaintiffs' speculative claim is belied by the admissible evidence. A summary of that evidence is as follows: On the day of the accident, Philip Lukat ("Lukat"), the Critical Infrastructure

Security Program Manager for the United States Army Corps of Engineers, Louisville District, remotely accessed the Cannelton digital video recorder, reviewed the recordings, and saved the footage that related to the accident. (*See* Defendant's Ex. L, Declaration of Philip Lukat ("Lukat Dec.") ¶¶ 1, 3). The video footage was provided to the United States' expert, Douglas Lacey, BEK TEK LLC, who examined the video and synchronized the views from cameras 6 and 14. (Defendant's Ex. M, Declaration of Douglas Lacey ¶ 4). He specifically testified that he "saw nothing to suggest that any portions within the AVI (Audio Video Interleave) files had been removed." (*Id.*). The synchronized video was then given to Captain Brian Boyce ("Captain Boyce"), U.S. Navy (Ret.), Virginia Beach, VA, a maritime accident reconstruction expert, for his analysis. (*See, generally*, Defendant's Ex. N, Declaration of Brian Boyce). In arriving at his reconstruction and analysis of the accident, Captain Boyce reviewed the synchronized video, interviewed witnesses, and visited the Dam. (*Id.*). Captain Boyce opined that "[a]lthough the video was recorded at low resolution, the various boats and their movements relative to the lock and dam structures can be readily discerned." (*Id.*). There is nothing in Captain Boyce's report from which the court could infer that the video was in any way tampered with or altered. The synchronized video is consistent with the eyewitness testimony of Graw, Wright, and Allen.

In sum, the admissible evidence establishes that Wiseman and Elder drove their boat, with the motor on, into the restricted area near Gates 3 and 4 of the Cannelton Dam. Their boat was overtaken by the turbulent waters, sending both men into the Ohio River.

Although the accident had tragic consequences, the only reasonable inference that may be drawn from the admissible evidence of record – the videotape footage, the contemporaneous eyewitness statements, and the persuasive collection of other evidence, including the accident reconstruction – firmly establishes that the accident in question was solely and proximately caused by Wiseman's and Elder's conduct, rather than any act or omission by the United States. No reasonable jury could find otherwise. Accordingly, the United States' Motion for Summary Judgment (Docket # 64) is **GRANTED**, and the Plaintiffs' Motion for Summary Judgment (Docket # 66) is **DENIED**.

**SO ORDERED** this 13th day of April 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Michelle T. Delemarre
UNITED STATES OF AMERICA
michelle.delemarre@usdoj.gov

Michael Anthony DiLauro
U.S. DEPARTMENT OF JUSTICE
michael.dilauro@usdoj.gov

Greg J. Freyberger
KAHN DEES DONOVAN & KAHN, LLP
gfreyberger@kddk.com

Norman E. Hay
NORMAN E. HAY ATTORNEY AT LAW
nehayattnyatlaw@yahoo.com

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Jessica Langston McClellan
U.S. DEPARTMENT OF JUSTICE
jessica.l.mcclellan@usdoj.gov

Benjamin Ryan Sweeney
U.S. DEPARTMENT OF JUSTICE
benjamin.r.sweeney@usdoj.gov